IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

    v.

PETER GILBERT,

              Defendant.

CRIMINAL ACTION
NO. 20-404

**OPINION**

**Slomsky, J.**                                                                                                                 **January 7, 2021**

**I.    INTRODUCTION**

Before the Court is Petitioner Peter Gilbert's Motion for Reconsideration of Detention Order ("Motion for Reconsideration") pursuant to the Bail Reform Act, 18 U.S.C. § 3141 et seq. (Doc. No. 23). Defendant filed the instant Motion on December 9, 2020, seeking release from custody pending trial due to the COVID-19 pandemic and the concomitant risk it poses to him given his serious medical history. (See id.) On December 17, 2020, the Government filed its Response in Opposition to Defendant's Motion (Doc. No. 28). Thereafter, Defendant filed a Reply Brief in Support of his Motion (Doc. No. 32). On December 28, 2020, the Court held a virtual hearing, during which the parties presented evidence and arguments in support of their respective positions. Defendant's medical records (Doc. No. 26) were also submitted and filed under seal. (See Doc. No. 27.) For reasons that follow, the Court will grant Defendant's Motion for Pretrial Release (Doc. No. 23).

**II.    BACKGROUND**

On April 21, 2020, the Government filed a Criminal Complaint against Defendant. (See Doc. No. 1.) That same day, Defendant was "arrested on a federal complaint and warrant." (Doc. No. 28 at 2. See also Doc. No. 3; Doc. No. 23 at 1.) On April 24, 2020, United States Magistrate

Judge Jacob P. Hart ordered Defendant detained without bail prior to trial. (See Doc. No. 4.) Four days later, on April 28, 2020, Magistrate Judge Carol Sandra Moore Wells granted the Government's Motion for Pretrial Detention (Doc. No. 5). (See Doc. No. 8.) Defendant has been confined at the Federal Detention Center in Philadelphia ("FDC Philadelphia") since his arrest on April 21, 2020. (See Doc. No. 23 at 5; Doc. No. 28 at 8.)

On November 12, 2020, a grand jury returned an Indictment (Doc. No. 19) charging Defendant with one count of manufacturing and attempting to manufacture child pornography, in violation of 18 U.S.C. § 2251(a) and (e) ("Count One"), and one count of distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) ("Count Two"). In Count One of the Indictment, Defendant is accused of violating § 2251(a) and (e) by:

> [E]mploy[ing], us[ing], persuad[ing], induc[ing], entic[ing], and coerc[ing] Minor #1, who had not attained the age of 18 years and who is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, and attempted to do so, and the visual depiction was produced using materials that had been mailed and shipped and transported in and affecting interstate and foreign commerce.

(Doc. No. 19 at 1.) In Count Two, Defendant is charged with violating § 2252(a)(2), (b)(1) by:

> [K]nowingly distribut[ing] a visual depiction using a means and facility of interstate and foreign commerce, that is, the Internet, and attempted to do so, and the producing of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and the visual depiction was of such conduct.

(Id. at 2.) Both offenses carry mandatory minimum sentences. Count One has a mandatory minimum of 15 to 30 years' imprisonment, while Count Two has a mandatory minimum of 5 to 20 years' imprisonment. See 18 U.S.C. § 2251(e), 2252(b)(1).

Defendant has been detained at FDC Philadelphia awaiting trial since April 21, 2020. (See Doc. No. 23 at 5; Doc. No. 28 at 8.) Trial is currently scheduled for February 2, 2021; however,

given the present COVID-19 pandemic, that date is not realistic. When the Court set the current trial date the effect of the COVID-19 pandemic on scheduling trials was in flux and therefore, through no fault of Defendant, it appears that a trial will not be held until well into 2021.

On December 9, 2020, Defendant filed the instant Motion for Reconsideration in which he urges the Court to grant him pretrial release because of the current COVID-19 outbreak at FDC Philadelphia where he is housed and the concomitant risk the virus poses to him given his serious medical history. (See Doc. No. 23 at 1, 2.) Alternatively, Defendant seeks temporary release pursuant to 18 U.S.C. § 3142(i)—the provision upon which the Court relies in granting Defendant's Motion (Doc. No. 23). (See Doc. No. 32 at 3.)

In his Motion, Defendant submits that he is a good candidate for pretrial release with conditions because he poses no risk of flight or danger to the community. (See Doc. No. 23 at 6.) Defendant proffers that he does not pose either one because he has "lifelong familial, residential, employment, and financial ties to Pennsylvania and New Jersey." (Doc. No. 23 at 4.) He was born and raised in Livingston, New Jersey and attended Villanova University. (See id.) Since his graduation from Villanova in 2006, Defendant "has resided in Pennsylvania." (Id.) "Prior to incarceration, [he] maintained steady employment, most recently having worked at Jefferson Hospital as a data analyst for the past four years." (Id.)

Defendant also has the support of his family. His wife and parents were present at the hearing held on December 28, 2020. He and his wife have been married for 12 years and they have four young children. (See id.) Defendant's parents, with whom he "maintains a strong relationship[,]" are married and "reside in a single family home in New Jersey." (Id.) At the hearing, Defendant's parents testified that they are the only two occupants of their residence. Defendant's father is a practicing attorney who has been a member of the New Jersey Bar for forty-

five years, while his mother is a retired teacher and now a homemaker. (See id.) If released, Defendant will reside with his parents at their house located in New Jersey and agrees to home confinement as a condition of bail. (See id. at 10, 12.) Defendant notes that he has no prior criminal record or history of violence. (See id. at 4, 10.)

Defendant also submits that pretrial release with conditions is appropriate because he was previously diagnosed with renal cancer in 2011, necessitating the subsequent removal of his right kidney. (See Doc. No. 23 at 4-5. See also Doc. No. 26, Ex. A, at 7-13; id., Ex. C, at 81.) Citing medical literature regarding the impact of COVID-19 upon kidney function, Defendant avers that his "medical condition exacerbates the already significant health risks he faces while in confinement at [FDC Philadelphia], where inmates are currently subject to lockdown due to a COVID-19 outbreak." (Doc. No. 23 at 11-12. See also id. at 2, 11.) Further, "should Mr. Gilbert contract COVID-19, with only one functional kidney, he would be at tremendous, heightened risk." (Doc. No. 32 at 3.) To evidence his condition, Defendant provides medical records from the Hospital of the University of Pennsylvania detailing the history of his renal cancer and kidney removal. (See Doc. No. 26, Ex. A.)

On December 17, 2020, the Government responded to the Motion. (See Doc. No. 28.) In the Response, the Government does not dispute Defendant's past cancer diagnosis but contends that he "does not currently have cancer, nor does he have chronic kidney disease." (Doc. No. 28 at 13.) Moreover, Defendant "did not require chemotherapy or other cancer treatments, and he has been living healthily, in remission, without evidence of disease, and with stable renal function for over eight years." (Id.) The Government also discusses the number of mitigation measures undertaken by the Bureau of Prisons ("BOP") to minimize the risk to defendants within the Philadelphia FDC. The Government avers that the BOP, in part,

> significantly restricted the intake and movement of inmates; it reduced the movement and congregating of inmates within institutions by confining inmates to their cells for longer periods; it severely restricted visits by non-BOP staff members to institutions; and it distributed face masks and cleaning supplies to all staff and inmates.

(Id. at 10.) "For over seven months, these and other steps were remarkably successful in preventing the spread of the virus within FDC Philadelphia, even as tens of thousands of people were infected in the surrounding city." (Id.) For these reasons, the Government opposes Defendant's pretrial release to home confinement with conditions.

But in a letter to a judge of this Court dated December 28, 2020, a representative of the BOP reported the following regarding the current conditions at FDC Philadelphia with respect to COVID-19:

> As of December 23, 2020, there were 10 COVID positive inmates housed at . . . FDC [Philadelphia] and 7 staff members who reported a positive test result. On December 21, 2020, one housing unit was placed on quarantine status and mass testing was being completed of the unit. The results of that testing are anticipated this week. All other general population housing units resumed previous operations.

Letter from BOP Representative, FDC Philadelphia's Response to COVID-19 (Dec. 28, 2020).

### III. DISCUSSION

#### A. The Analytical Framework and Other Considerations Regarding Motions for Temporary Release Pursuant to 18 U.S.C. § 3142(i)

Defendant essentially asks the Court to reconsider his pretrial detention in light of the danger posed by the current COVID-19 pandemic and his medical history. 18 U.S.C. § 3142(i) provides in part,

> [A] judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for . . . [a] compelling reason.

5

18 U.S.C. § 3142(i).

> As this Court noted in United States v. Gongda Xue,
>
>> In light of the COVID-19 pandemic, Section 3142(i)'s potential applicability is clear, but whether relief is warranted under that Section is considered on a case-by-case basis. Federal courts have been inundated with requests from defendants seeking release from detention due to the risks presented by COVID-19. Case law on the subject has grown at a seemingly exponential pace.
>>
>> This Court has made every effort to stay apprised of the latest decisions and the analytical framework for reviewing Section 3142(i) requests filed in response to the current pandemic. While there has been some discrepancy among courts about how these requests should be resolved, two guiding tenets have emerged. First, the generalized risk of COVID-19 is not, in and of itself, a sufficient reason to justify release. Second, Section 3142(i) motions must be considered within the larger context of the requirements of the Bail Reform Act. Thus, resolving Section 3142(i) motions requires an individual assessment of the movant's characteristics and circumstances in light of these two considerations.

No. 18-122, 2020 U.S. Dist. LEXIS 81282, at *15 (E.D. Pa. May 8, 2020) (tenet order modified).

First, courts have generally "rejected emergency motions for release . . . based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Denmark, No. 19-CR-15, 2020 U.S. Dist. LEXIS 73640, at *15 (M.D. Pa. Apr. 27, 2020) (internal citations omitted). "Rather, at a minimum[,] courts have typically required proof of a '[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i).'" Id. (quoting United States v. Keith Kennedy, No. 18-20315, 2020 U.S. Dist. LEXIS 53359, at *4 (E.D. Mich. Mar. 27, 2020)). Recently, in related contexts, the Third Circuit Court of Appeals has endorsed this concept, requiring proof beyond COVID-19's generalized risks when a defendant seeks release from detention.

In United States v. Raia, in considering a petition for compassionate release, the Third

Circuit stated,

> We do not mean to minimize the risks that COVID-19 poses in the … prison system, particularly for inmates … But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify … release.

954 F.3d 594, 597 (3d Cir. 2020).

Similarly, in United States v. Roeder, in considering a motion for release from detention pending sentencing, the Third Circuit explained that,

> [T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence[.]

No. 20-1682, 2020 U.S. App. LEXIS 10246, at *7 (3d Cir. Apr. 1, 2020).

Although neither case involved a motion for temporary release under Section 3142(i), the same concept is equally applicable to this Section. See Denmark, 2020 U.S. LEXIS 73640, at *15 (denying a defendant's Section 3142(i) motion and citing Raia and Roeder). Thus, for a movant to satisfy his burden of proof under Section 3142(i), he must make an "individualized and specific showing of a compelling reason[.]" United States v. Brown, No. 19-259, 2020 U.S. Dist. LEXIS 74193, at *11 (M.D. Pa. Apr. 28, 2020). There is no "one-size-fits-all, blanket approach" to resolving this issue. United States v. Nikparvar-Fard, No. 18-101-1, at *10 (E.D. Pa. Apr. 20, 2020).

Second, decisions by other district courts make clear that an assessment about whether to grant a defendant temporary release under 18 U.S.C. § 3142(i) also includes a consideration of the Bail Reform Act as a whole. See, e.g., United States v. Green, No. 19-233, 2020 U.S. Dist. LEXIS 75950, at *12 (M.D. Pa. Apr. 30, 2020). In this Act, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court.

7

One precept is that persons must be released so long as the court can be reasonable assured that they do not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To that end, detention is the exception; and to the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released. Id.

In assessing what, if any, conditions can be fashioned, courts are directed to consider the factors enumerated in 18 U.S.C. § 3142(g). Those factors include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime . . . involv[ing] a minor victim[;]" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person," including their financial resources, community and family ties, and record of appearing at court proceedings; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

In addition to these factors, the Bail Reform Act also requires district courts to weigh release decisions against certain statutory presumptions, including a presumption in favor of detainment for defendants charged with "an offense involving a minor victim" under 18 U.S.C. §§ 2251, 2252(a)(2). § 3142(e)(3)(E). In these cases, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed[,]" one of the enumerated offenses. 18 U.S.C. § 3142 (e)(3). On April 28, 2020, Judge Wells granted the Government's Motion for Pretrial Detention of Defendant (Doc. No. 5) after finding that he "poses a danger to the community and to children, in particular, and that no condition or combination of conditions . . . could reasonably assure the safety of the community from him and his appearance in court as required[.]" (Doc. No. 28 at 2.)

If a person is detained, Section 3142(i) provides a "limited safety valve provision," United States v. Washington-Gregg, No. 19-331, 2020 U.S. Dist. LEXIS 72355, at *14 (M.D. Pa. Apr. 24, 2020), enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). But in the COVID-19 environment, this re-examination does not take place in isolation. Rather, courts also have considered the following factors:

> (1) the specificity of the defendant's stated COVID-19 concerns, (2) the original grounds for the defendant's pretrial detention, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Deshields, No. 19-cr-99, 2020 U.S. Dist. LEXIS 73643, at *7 (M.D. Pa. Apr. 27, 2020) (citing United States v. Clark, No. 19-40068, 2020 U.S. Dist. LEXIS 51390 (D. Kan. Mar. 25, 2020)) (series order amended). "The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'" Denmark, 2020 U.S. Dist. LEXIS 73640, at *17 (quoting Clark, 2020 U.S. Dist. LEXIS 51390, at *3).

### B. Defendant's Motion for Reconsideration Will Be Granted

Defendant's Motion will be granted because there is a compelling reason for his release to home confinement and there are conditions of release that can be fashioned to ensure the safety of the community and Defendant's appearance at trial. In reaching this decision, the Court has considered Defendant's individual COVID-19 risk; the relevant factors under the Bail Reform Act, including the presumption in favor of detainment; and Defendant's proposed conditions of release in light of the COVID-19 environment. No single factor was determinative; rather, a collective

consideration led to the conclusion that Defendant should be released pending trial. A discussion of each consideration is provided below.

First, Defendant has shown the kind of particular vulnerability to COVID-19 necessary to establish a compelling reason for temporary release. The objective medical evidence in this case shows he was previously diagnosed in 2011 with renal cancer and presently has only one functioning kidney. (See Doc. No. 26, Ex. A, at 7-13. See also id., Ex. C, at 81.)

Defendant avers that this "medical condition exacerbates the already significant health risks he faces while in confinement at the federal detention center in Philadelphia, where inmates are currently subject to lockdown due to a COVID-19 outbreak." (Doc. No. 23 at 13-14.) Conversely, the Government contends that Defendant's past cancer diagnosis does not present a risk significant enough to warrant his pretrial release. Specifically, the Government states that Defendant "does not currently have cancer, nor does he have chronic kidney disease," rather, he has been "living in good health, in remission from renal cancer for over eight years." (Doc. No. 28 at 9, 13 (emphasis omitted)).

The Government's argument, however, does not account for the fact that Defendant is currently living with only one kidney after having his right one removed following his cancer diagnosis in 2011. As Defendant affirms, this condition "is of critical concern given the body of medical literature that has emerged in recent months regarding the impact of COVID-19 upon kidney function." (Doc. No. 32 at 2.) See COVID-19 and Kidney Disease: Molecular Determinants and Clinical Implications in Renal Cancer - Beyond the Abstract, URO Today, July 8, 2020 ("Patients with chronic renal injury are generally at higher risk for severe COVID-19 infections.") (available at https://www.urotoday.com/recent-abstracts/urologic-oncology/renal-cancer/122853-covid-19-and-kidney-disease-molecular-determinants-and-clinical-implications-

in-renal-cancer-beyond-the-abstract.html); Kidney Disease and COVID-19: What Are the Risks?, Massachusetts General Hospital, August 18, 2020 ("While kidney disease does not put patients at higher risk of contracting COVID-19, it does put patients at risk for more severe outcomes—such as kidney function decline—during infection"; "About one in every three people who are admitted to the hospital for COVID-19 will develop acute kidney injury (AKI)—a sudden decline in kidney function—*even if they have never had kidney disease before*." (emphasis added)) (available at https://www.massgeneral.org/news/coronavirus/kidney-disease-and-covid-19).

Although the Government contends that Defendant's medical condition was already considered by Judge Wells in ordering pretrial detention, in the past eight months since the Detention Order was entered, "much has been learned about the devastating impact that COVID-19 may have upon individuals who suffer from cancer and kidney disease." (Doc. No. 23 at 2 (citing Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People at Increased Risk, December 1, 2020 (available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html)). Indeed, "many courts have found that it is appropriate to reopen and reassess a previous bail determination under 18 U.S.C. § 3142(f) in light of the COVID-19 pandemic and the risks that it poses to a particular defendant." (Doc. No. 32 at 3.) In fact, this past August, the Third Circuit reversed a district court's denial of a request for pretrial release under 18 U.S.C. 3142(i) in light of the defendant's pre-existing condition that made him more susceptible to severe illness from COVID-19. See Xue, 2020 U.S. Dist. LEXIS 81282, at *1.

Given Defendant's past renal cancer and the fact that he is currently living with only one kidney, continued pretrial detention presents an exceptional and untenable risk to his health and safety. COVID-19 is an undisputed and unprecedented public health crisis. As a virus that can

have devastating impact upon kidney function, the consensus medical opinion is that COVID-19 infection increases the risk of impaired kidney functioning both in patients with and *without* pre-existing kidney disease. See COVID-19 and Kidney Disease: Molecular Determinants and Clinical Implications in Renal Cancer - Beyond the Abstract, supra (emphasis added). See also id. ("The molecular mechanism of [COVID-19] infection is intimately intertwined with the kidney."). If Defendant contracts COVID-19, he is at risk of damaging or losing his only remaining kidney and this may result in catastrophic harm to his health. As a result, Defendant has satisfied the requirement that he prove he has a particular vulnerability to COVID-19.

Second, a consideration of the present circumstances and the relevant factors under the Bail Reform Act also support Defendant's temporary release pending trial. As discussed supra, the factors listed in 18 U.S.C. § 3142(g) and the circumstances posed by the COVID-19 pandemic guide our review. Applied here, the facts and circumstances presently before the Court show that Defendant is a good candidate for pretrial release.

At the outset, the Court acknowledges that in April 2019 Defendant was ordered detained pending trial. That decision, however, rested upon the statutory presumption that no condition or combination of conditions would reasonably assure his appearance and the safety of the community. Under this presumption, Defendant bore the burden of proving that he would not pose these risks and the Court found he had not sufficiently rebutted the presumption.

Defendant still faces the presumption, but circumstances have changed. Society is facing a viral pandemic that has already killed more than 300,000 Americans and the Court must take into consideration the new public health challenges posed by COVID-19 when making bail decisions under the Bail Reform Act. Further, the relevant factors under Section 3142(g) of the Bail Reform Act support Defendant's temporary release pending trial.

The Court agrees that "[b]ecause of [Defendant's] substantial ties to the community and the absence of any threat of physical violence, home confinement and electronic monitoring would be more than sufficient to ensure his future appearance in court and the safety of the community." (Doc. No. 23 at 10.)  Defendant is 36 years old with "lifelong familial, residential, employment, and financial ties" in this federal circuit.  (Id. at 4.)  He was raised, educated, and employed here. (See id.)  Defendant's parents, with whom he has a strong relationship, reside in nearby Livingston, New Jersey.  (See id. at 4.)  Defendant also has no prior criminal record or history of violence. (See id. at 4, 10.)

Moreover, "suitable individuals in a child-free home have indicated their willingness to serve as custodians in this matter."  (Id. at 9-10.)  Defendant's parents, both present at the hearing held on December 28, 2020, have represented that Defendant can live with them in their "single family home in New Jersey[]" while Defendant is awaiting trial.  (Id. at 4.)  His parents testified at the hearing that there are no minor children in their residence, as they are the only occupants of the home.  Defendant's mother testified that she remains home fulltime, as she is retired. Defendant's father testified that he works from home part-time as a practicing attorney.

Further, given Defendant's heightened vulnerability to COVID-19 and the medical necessity of practicing social distancing, the reality is that the risk of commission of future crime is diminished.  And since he will be living with his parents, both of whom have expressed their willingness to monitor Defendant's compliance with the bail conditions, Defendant will have the benefit of a stable environment.  In addition, strict conditions of bail will be imposed with home confinement with GPS tracking.  Specifically, Defendant will be subject to 24-hour-a-day lockdown in his parents' home.  Except for monitored telephone calls and visits with his children, he will be prohibited from having any contact with any minor child.  Defendant will also be

prohibited from accessing the internet by way of any computer device or smartphone. At the hearing, Defendant's parents assured the Court that he will not have access to the internet while detained in their home and that they are willing to do whatever is necessary to remove the risk of Defendant gaining internet access. The Government's assertion that Defendant's previous employment as a data analyst creates a risk that he will be able to circumvent restrictions on his internet access does not change the Court's decision. For all these reasons, Defendant has overcome the statutory presumption that, if released on bail, he would pose a risk of flight or present a danger to the safety of the community.

Regarding the factor of the nature and circumstances of the offenses charged, there is no doubt that the offenses are serious and the Government has argued that the offenses have mandatory minimums that would exceed the time Defendant has been incarcerated, if he were convicted of the offenses. Needless to say, the Government believes it has a strong case and the weight of the evidence is a factor that could influence continued detention. But the Court cannot overlook the fact that Defendant is presumed innocent and even though he is cognizant of the Government's evidence against him, he has maintained his constitutional right to a trial by a jury. See 18 U.S.C. § 3142(j) ("Nothing in [18 U.S.C. § 3142] shall be construed as modifying or limiting the presumption of innocence."). Although it would appear that these two factors might warrant detention, conditions can still be fashioned to assure the safety of the community and Defendant's appearance at trial. Thus, the provisions of the Bail Reform Act support his temporary release pending trial.

Third, Defendant's proposed release plan is tailored to mitigate his COVID-19 risk. At the Philadelphia FDC, Defendant shares a cell with another inmate. As a result, he cannot take certain proactive measures, such as maintaining six feet of separation from other persons, that public

health experts recommend to limit the risk of infection. Additionally, it is clear that prisons present a breeding ground for COVID-19 transmission due to the large number of persons residing in close quarters. Thus, if COVID-19 were to continue to infiltrate the general population in the Philadelphia FDC, there would be little Defendant could do to insulate himself from the virus.[1] Due to the fact that he has only one kidney, COVID-19 could have a fatal effect upon Defendant if he were to contract the virus.

In contrast, if Defendant were released to home confinement at his parents' house—a "single family home in New Jersey"—he could protect himself from the virus by quarantining during the first fourteen days and practicing social distancing from family members as needed thereafter. Furthermore, the Court is assured that Defendant would remain in the household given the risk of contracting COVID-19 if he exposed himself to the public, and because he would be subject to GPS tracking as a condition of temporary release.[2]

---

[1] As this Court noted in United States v. Grimes, Criminal Action No. 16-59, 2020 WL 3056060, at *8 n.4 (E.D. Pa. June 9, 2020): "To be clear, this is not a blanket statement that the Philadelphia FDC is generally unsafe. Indeed, to the contrary, the Court applauds the BOP for its efforts to prevent the spread of COVID-19 within its facilities. The Court's decision stems from the fact that Defendant has made a particularized showing based on detailed medical documentation that his circumstances present an exceptional vulnerability to COVID-19 that can be mitigated by temporary release, and that conditions of release can be fashioned to assure the Court that Defendant does not flee or pose a danger to the community. See United States v. Ruff, No. 18-561-2, 2020 U.S. Dist. LEXIS 91243, at *14-15 (E.D. Pa. May 26, 2020) (recognizing the BOP's efforts to prevent the spread of COVID-19 in the Philadelphia FDC but nevertheless determining that the defendant should be released pending sentencing due to his particular vulnerability to a severe form of COVID-19)."

[2] In Grimes, the Court noted the following regarding the fourth factor, which applies equally well here: "The fourth factor courts consider when evaluating Section 3142(i) motions in the COVID-19 environment—i.e., the likelihood that the defendant's proposed release would increase COVID-19 risks to others—is neutral. While Defendant could contract COVID-19 if he remains incarcerated or if he is released, the risk of his transmitting it to others in either scenario is too speculative to be considered. See United States v. Gongda Xue, No. 18-122, 2020 U.S. Dist. LEXIS 81282, at *26 n.10 (E.D. Pa. May 8, 2020) (finding whether the defendant's proposed release would increase COVID-19 risks to others to be a neutral factor in

In sum, Defendant has shown a compelling reason to justify release pursuant to Section 3142(i). The risk to his health from the COVID-19 outbreak at FDC Philadelphia where Defendant is currently incarcerated establish a compelling reason for release. Furthermore, the Bail Reform Act factors, viewed in light of the COVID-19 environment, support his temporary release, and his proposed conditions of release limit his risk of contracting COVID-19 and assure the Court that he will appear for trial and not pose a danger to the community. For all these reasons, the Court will grant Defendant's request for temporary release from custody while awaiting trial and order Defendant released to home confinement with conditions.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Reconsideration (Doc. No. 23) will be granted. An appropriate Order with all the conditions of bail will be issued along with this Opinion.

---

the Section 3142 analysis given the speculative nature of COVID-19 transmission)." Grimes, 2020 WL 3056060, at *8 n.5.